IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JOYCE B. BERTASSO-WHITE,

        Plaintiff,

    v.

CITY OF MOLALLA, GENE E. GREEN, and
ROBERT D. ELKINS,

        Defendants.
_____

Civil No. 03-1052-HA

OPINION AND ORDER

Cathleen B. Callahan
John P. Salisbury
Salisbury & Callahan, LLP
PO Box 288
Clatskanie, Oregon 97016
    Attorneys for Plaintiff

Amy L. Buckler
Karen M. O'Kasey
Hoffman Hart & Wagner, LLP
1000 S.W. Broadway, Twentieth Floor
Portland, Oregon 97205
    Attorneys for Defendants City of Mollala
    and Gene E. Green

PAGE 1 - OPINION AND ORDER

Stan LeGore
Robert S. Wagner
Miller & Wagner, LLP
2210 N.W. Flanders Street
Portland, Oregon 97210
    Attorneys for Defendant Robert D. Elkins

HAGGERTY, Chief Judge:

Plaintiff filed this action against her employer, in August 2003, alleging unlawful discrimination under Title VII and 42 U.S.C. § 1983, and denial of due process and equal protection under the United States Constitution and O.R.S. 659A.030. She alleges that defendant Robert D. Elkins (Elkins) subjected her to sexual harassment during three years while she worked for defendant City of Molalla (the City).

Defendant Elkins and defendants the City and Gene E. Green (Green) filed Motions for Summary Judgment (Docs. #22, 26). Oral argument was heard on May 16, 2005. For the following reasons, defendant Elkins' motion is denied, and the motion brought by the City and Green is granted.

## FACTUAL BACKGROUND

Plaintiff began working for the City in October 1996 as a utility billing clerk, a position she still holds. She also worked as a volunteer police reservist for the Molalla City Police Department from 1996 until 1998. During plaintiff's tenure at the police department, defendant Elkins was the Chief of Police, and plaintiff was a subordinate to him. Plaintiff left the police department in 1998. As a billing clerk, plaintiff did not report to Elkins and he played no role in her performance evaluations. Deposition of Joyce B. Bertasso-White (Bertasso-White Dep.), 75:9 to 76:2.

Plaintiff alleges that from the time she left the police reservist position in 1998 until Elkins resigned in October 2001, she was subjected to repeated sexual comments from Elkins. *Id.* at 57:9-20; 62:1-16 to 63:1, 10; 68:12-14; 71:15-20. She asserts that the sexual comments increased when her now-husband, Gordon White (White), a police officer, was out of town for training. Elkins would ask plaintiff if she was lonely and then tell her that he could come over and "make her happy." *Id.* at 66:1 to 67:19.

In addition to the comments, plaintiff alleges that when she would see Elkins in the hallway, he would stare at her breasts, raise his eyebrows and make biting noises and moan. *Id.* at 68:6-9. Plaintiff contends that she told Elkins may times to "[k]nock it off," "cut it out," "[q]uit joking," and that "it was none of his business." *Id.* at 53:5-8; 57:18-20.

At some point in 2001, Ron Lister (Lister), the officer in charge of the police reserve program, told plaintiff that there was a position available for a reserve officer and asked her if she wanted to apply. *Id.* at 127:22 to 128:25. Plaintiff responded that she would think about it. *Id.* She later told Lister that she was not going to apply, saying that her interest in the law enforcement field had waned since her father, a former police officer, died. *Id.* at 129:16-23. In August 2001, Elkins approached plaintiff about the reserve position, saying, "I'll let you back in the reserve program if you make me happy." *Id.* at 130:2-13; Pl.'s Am. Mem. in Opp. to Defs.' Mot. for Summ. J., at 7.

Defendant Green is the Molalla city administrator and is in charge of human resource development. Plaintiff asserts that in 2000, a female court clerk, Danna Harrington (Harrington) reported to Green that Elkins "had come up from behind and poked [her] in the ribs . . . ." Deposition of Gene E. Green (Green Dep.) at 96:3-16. Green

did not view this behavior as sexual harassment, but thought it was inappropriate and that he should monitor it. He did not talk to Elkins about it. *Id.* at 96:3-25 to 98:14

On September 27, 2001, Kathy Smith (Smith), a city employee, notified Green that she and Elkins had engaged in consensual oral sex at work, but that Elkins had been making suggestive comments to her that made her uncomfortable, and had recently entered her apartment unannounced and that she wanted it to stop. *Id.* at 33:10-24. The following day, Green put Elkins on administrative leave and began an investigation. *Id.* at 43:18 to 44:2. On September 29, 2001, Elkins met with Green and Tom Foster (Foster), president of the city council, and tendered his resignation, effective October 12, 2001. *Id.* at 48:2-8; Callahan Aff., Ex. E. On September 31, 2001, Elkins requested an additional month's salary severance due to his length of service with the City. *Id.* at 55:14-17. At the time the City approved Elkins' request, Green and the Mayor knew that he was being accused of sexual harassment by at least one employee. *Id.* at 56:10-19.

Elkins moved to Alaska on October 5, 2001. Prior to his departure, plaintiff asserts that Elkins "begged [her] not to tell anyone the truth" and to not "tell anybody about all of the stuff that's gone on with him and [plaintiff]." Bertasso-White Dep., 124:16 to 125:10.

In early October 2001, plaintiff reported to Green that Elkins had harassed her, and complained that Elkins was "getting off easy" in light of this and Smith's complaint. *Id.* at 106:1-11; Affidavit of Gene E. Green (Green Aff.), ¶ 3. Green responded that he "just want[ed] this to go away." Bertasso-White Dep., 106:1-11. On October 18, 2001, plaintiff reported to the Mayor that Elkins had sexually harassed her and that she felt that

PAGE 4 - OPINION AND ORDER

something needed to be done. *Id.* at 109:3-14 to 110:25. The Mayor responded, "Well, [Green] told me he just wants this to go away." *Id.*

On November 14, 2001, Green sent plaintiff a memo summarizing her allegations of harassment, asking her if she wanted "to proceed with an investigation of immoral turpitude by [Elkins]," and inviting her to schedule a meeting with Green if she wanted to proceed. *Id.* at 113:19 to 114:1; Green Aff., Ex A. Plaintiff did not schedule a meeting. *Id.* at 113:12 to 115:6. She did, however, accept the City's offer to provide her with counseling. *Id.* at 115:19-21. On November 29, 2001, plaintiff indicated that she wanted to participate in an investigation of Elkins' conduct. Green Aff., ¶ 4.

In the beginning of December 2001, Green began an investigation of the allegations against Elkins. *Id.* at 114:25 to 116:4. An outside investigator, Leon Colas (Colas) was retained and was given a list of individuals to be interviewed that included plaintiff. *Id.* at 116:8-22. The investigator wrote a report finding that the reports of harassment were credible and concluding that "Elkins regularly engaged in a pattern of sexual harassment and improper sexual conduct of an egregious level over an extended period of time." Callahan Aff., Ex. F. Shortly after Colas' report, the City amended its sexual harassment policy. The City's current sexual harassment policy was updated to include a more detailed description of what activity is prohibited, the responsibilities of supervisors and employees in preventing and reporting harassment, and also included a complaint procedure. Affidavit of Amy L. Buckler (Buckler Aff.), Ex. N; Green Dep. at 18:7-20.

On May 6, 2002, plaintiff filed a complaint with the Oregon Bureau of Labor and Industries (BOLI), and received a right to sue notice on May 6, 2003. BOLI's Notice of Substantial Evidence Determination, noted that plaintiff indicated that it was "very hard to come up with exact dates when [Elkins' comments] were made. These things went on weekly, monthly for about 3 years." Callahan Aff., Ex. J.

## STANDARDS

### Summary Judgment

A party is entitled to summary judgment as a matter of law if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c); *See Bahn v. NME Hosps.', Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991).

The moving party carries the initial burden of proof. The party meets this burden by identifying portions of the record on file that demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). Once the initial burden is satisfied, the burden shifts to the nonmoving party to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *Id.*

The court must view the evidence in the light most favorable to the non-moving party. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000) (citations omitted). All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *MetroPCS, Inc. v. City and County of San Francisco*, 400 F.3d 715, 720 (9th Cir. 2005) (citation omitted). Where different ultimate inferences

may be drawn, summary judgment is inappropriate. *Sankovich v. Ins. Co. of N. Am.*, 638 F.2d 136, 140 (9th Cir. 1981) (citing Fed. R. Civ. P. 56(c)).

Deference to the non-moving party does have some limit. The non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The "mere existence of a scintilla of evidence in support of the [non-moving party's] position would be insufficient." *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 252 (1986). Therefore, where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

The Ninth Circuit has reiterated that a high standard exists for granting of summary judgment in employment discrimination cases. *Schnidrig v. Columbia Machine, Inc.*, 80 F.3d 1406, 1410 (9th Cir. 1996) (holding that courts should require very little evidence to survive summary judgment in a discrimination case, because the ultimate question is one that can be resolved only through a searching inquiry – one that is most appropriately conducted by the fact-finder, upon a full record) (citations omitted); *see also Lam v. University of Hawaii*, 40 F.3d 1551, 1559 (9th Cir. 1994) (quoting *Sischo-Nownejad v. Merced Community College Dist.*, 934 F.2d 1104, 1111 (9th Cir. 1991)).

**Section 1983**

To state a claim for damages arising from an alleged constitutional violation under 42 U.S.C. § 1983, a plaintiff must allege (1) that the defendant, a "person," acted under color of state law, (2) to deprive the plaintiff of federal constitutional or legal rights. *Ove v. Gwinn*, 264 F.3d 817, 824 (9th Cir. 2001) (citation omitted).

A Section 1983 plaintiff can seek compensatory and punitive damages, declaratory relief or equitable relief. The Eleventh Amendment bars all such claims except those against individuals sued in their individual capacities. *Price v. Akaka*, 928 F.2d 824, 828 (9th Cir. 1990) (citations omitted). State employees who are sued for damages in their "official" or "representative" capacities are considered to be the state itself and, therefore, are not "persons" and not subject to suit under Section 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

There is no vicarious liability under Section 1983. *Bd. of County Comm'rs of Bryan County, Okla. v. Brown*, 520 U.S. 397, 403 (1997). To establish municipal liability under Section 1983, the plaintiff must identify a custom, practice, or policy that caused his or her injury. *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690-92 (1978). This can be established through any one of the following theories: (1) that a city employee was acting pursuant to an expressly adopted official policy; (2) that a city employee was acting pursuant to a longstanding practice or custom; (3) that the individual who committed the wrong had final decision-making authority; or (4) that someone with final decision-making authority ratified a subordinate's action and its basis. *Lytle v. Carl*, 382 F.3d 978, 982 (9th Cir. 2004) (citation omitted).

**Equal Protection**

To sustain a claim for denial of equal protection, the plaintiff must prove that the defendant, a state actor, acted in a discriminatory manner toward the plaintiff because of his or her sex, and that the discrimination was intentional. *Bator v. State of Hawaii*, 39 F.3d 1021, 1028-29 (9th Cir. 1994) (holding that the plaintiff "had a clearly established

constitutional right to be free of sexual harassment" and that "[s]ubjecting a woman to abuse on the job is exactly the kind of sex discrimination prohibited by the Equal Protection Clause . . . ."). Discriminatory intent may be proved by direct or indirect evidence. *Fed. Deposit Ins. Corp. v. Henderson*, 940 F.2d 465, 471 (9th Cir. 1991) (citations omitted). This test is far less stringent than that required to be met in a hostile work environment claim, discussed below.

### **Hostile Work Environment and Sexual Harassment**

For a hostile work environment claim under Title VII, the plaintiff must prove: (1) that she was subjected to verbal or sexual conduct of a sexual nature; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the terms and conditions of the plaintiff's employment and create an abusive work environment. *Porter v. Cal. Dep't. of Corr.*, 383 F.3d 1018, 1027 (9th Cir. 2004). The plaintiff must show that the work environment was both objectively and subjectively hostile. *Brooks v. City of San Mateo*, 229 F.3d 917, 923-24 (9th Cir. 2000).

To hold an employer liable for a hostile work environment or sexual harassment claim, if the alleged harasser is a coworker of the plaintiff's, the plaintiff must establish that the employer knew or should have known of the harassment and failed to take remedial measures reasonably calculated to end the harassment. *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1119-20 (9th Cir. 2004). If, however, the alleged harasser is a supervisor, the employer may be vicariously liable for the supervisor's conduct. *Kohler v. Inter-Tel Techs.*, 244 F.3d 1167, 1177 (9th Cir. 2001).

If the harassment did not involve a "tangible employment action," there is an affirmative defense that, if proven, will allow the employer to avoid liability. A "tangible employment action" constitutes a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus. Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). Fulfilled threats to condition an employee's continued employment upon submissions to sexual demands or favors – *quid pro quo* harassment – are tangible employment actions. *Holly D. v. Cal. Inst. of Tech.*, 339 F.3d 1158, 1169-70 (9th Cir. 2003). Conversely, unfulfilled threats do not constitute *quid pro quo* harassment, and are not tangible employment actions. *Ellerth*, 524 U.S. at 751, 753-54. They may, however, be sufficient for a hostile work environment claim. *Id.*

## ANALYSIS

**1.  Plaintiff's Claims Against the City and Green**

Plaintiff filed this action against her employer, in August 2003, alleging unlawful discrimination under Title VII and 42 U.S.C. § 1983, and denial of due process and equal protection under the United States Constitution and O.R.S. 659A.030. At oral argument, plaintiff conceded that there is no Title VII claim against defendant Green.

**Plaintiff's state law claim and *quid pro quo* claim are time-barred**

The Oregon Tort Claims Act provides that any person maintaining a tort claim, including a claim for discrimination, against a public body or public official must provide notice within 180 days of the alleged injury. O.R.S. 30.275(1), (2). This requirement is a condition precedent to recovery that, if not satisfied, deprives a plaintiff of the right to

make a claim. *Orr v. City of Eugene*, 950 P.2d 397, 398 (Or. App. 1997) (citation omitted). "[T]he underlying predicate for the notice provisions in the statute is the existence of a claim being made against a public body or official at the time notice is presented. Therefore, the notice must contain a claim for relief of some kind by the party who seeks to rely on it." *Robinson v. Shipley*, 669 P.2d 1169, 1171 (Or. App. 1983) (citations omitted). Notice can be satisfied by submitting a formal notice claim or showing that the public body or official has actual notice of the claim against it. O.R.S. 30.275(3). "Actual notice" includes

> any communication by which any individual to whom notice may be given . . . or any person responsible for administering tort claims on behalf of the public body acquires actual knowledge of the time, place and circumstances giving rise to the claim, where the communication is such that a reasonable person would conclude that a particular person intends to assert a claim against the public body or an officer, employee or agent of the public body.

O.R.S. 30.275(6); *see also Flug v. Univ. of Oregon*, 73 P.3d 917, 922 (Or. 2003).

Here, the alleged injury – harassment by Elkins – stopped on or before October 5, 2001, when he moved to Alaska. Thus, to satisfy the statute's formal notice requirement, plaintiff needed to provide notice to the City of her claim by April 3, 2002. Plaintiff did not submit a Tort Claim Notice to the City until May 6, 2002. Plaintiff, therefore, fails to meet the statute's provision regarding providing formal notice to the public body within 180 days of the alleged injury.

Similarly, to satisfy the statute's provision regarding actual notice, plaintiff must provide the City with actual notice of "the time, place and circumstances giving rise to the claim . . . such that a reasonable person would conclude that a particular person intends to

assert a claim against the public body or an officer, employee or agent of the public body" within 180 days of the alleged injury – that is, by April 3, 2002.

Plaintiff asserts that the City had actual notice that she intended to file a claim against it and Green because she notified Green the week of October 8, 2001, that Elkins had harassed her, and Green documented plaintiff's complaints in a memorandum dated November 14, 2001. She also contends that Green heard of a conversation plaintiff had with another employee indicating that plaintiff was asserting a claim against the City, although plaintiff provides no substantive evidence of such a conversation.

In *Robinson*, a former student brought a tort action against a physician who worked at the college's student health center. 669 P.2d at 1170. The trial court granted summary judgment for the defendant because the plaintiff failed to comply with the Oregon Tort Claims Act's notice requirements. *Id.* The alleged negligent treatment occurred on September 27, 1978. On March 15, 1979 – within the statutory time period – the plaintiff's attorney sent a letter to the defendant, stating that, "This office has been retained to investigate the present condition of [the plaintiff] resulting from care and treatment received . . . .The treatment in question occurred during the month of October, 1978." *Id.* at 1171. The letter requested a medical report from the physician "setting forth [the physician's] findings, diagnosis, prognosis, and causation of [plaintiff's] resulting condition." *Id.* The defendant made a copy of this letter and forwarded it on to the Attorney General's office. *Id.* The Oregon Court of Appeals affirmed the trial court's decision, holding that although the letter notified the defendant of an ongoing

investigation, it failed to identify any claim or intent to make a claim by the plaintiff against the defendant, as required by the statute. *Id.*

In *Flug*, an employee filed suit against her former employer, the University of Oregon, alleging intentional infliction of emotional distress (IIED). 72 P.3d at 918. The plaintiff alleged that after placing her on administrative leave, the defendant intentionally caused her emotional distress during a meeting on May 10, 1995, when the defendant presented her with options concerning her employment. *Id.* at 919. The Oregon Supreme Court found that plaintiff's claim accrued on May 10, 1995, and that her notice of claim was due within 180 days of that date. *Id.* at 922. On various occasions thereafter within the 180-day time limit, plaintiff's counsel and defendant's counsel communicated by letter. *Id.* These letters included requests by the plaintiff's counsel for the plaintiff's personnel file, and contained attachments of medical releases to work by the plaintiff's physicians. *Id.* at 922-23. In support of her argument that the defendant had actual notice of her IIED claim within the 180-day time frame, the plaintiff argued that these letters adequately apprised the defendant of her intent to make a claim. The Oregon Supreme Court disagreed, finding that the letters expressed only a concern that the defendant's behavior was unlawful, and not an intent to sue the defendant over its behavior. *Id.* at 925.

Here, plaintiff informed Green of her complaints in October 2001. Green memorialized those complaints in a memorandum dated November 14, 2001. Green told plaintiff that she should schedule a meeting with him if she wanted to proceed with an investigation against Elkins. Plaintiff did not schedule a meeting with Elkins, but later agreed to participate in an investigation. That investigation concluded in December 2001.

PAGE 13 - OPINION AND ORDER

At no point did plaintiff convey to Green or "any person responsible for administering tort claims on behalf of the [City]" that she "intend[ed] to assert a claim against the [City] or an officer, employee or agent of the [City]." Plaintiff's complaints of harassment identified to the City the circumstances giving rise to plaintiff's subsequent claim. However, under *Flug* and *Robinson*, these complaints, and plaintiff's subsequent participation in an investigation of Elkins' conduct, are insufficient to put the City on notice that plaintiff intended to file a claim against the City for sexual harassment. Accordingly, plaintiff's state law claim is barred by the statute of limitations and is dismissed.

Similarly, plaintiff's *quid pro quo* claim is time-barred. Plaintiff filed her BOLI complaint on May 6, 2002. The BOLI proceedings were terminated on May 6, 2003, when plaintiff received her right to sue notice. Her EEOC complaint was deemed constructively filed on July 5, 2002. *See* 42 U.S.C. § 2000e-5(c); 29 C.F.R. § 1601.13(b)(1). When a plaintiff initiates proceedings with the appropriate state agency, as in this case, the plaintiff must file the EEOC complaint within 300 days of the occurrence of the alleged unlawful employment practice. *Green v. Los Angeles County Superintendent of Schs.*, 883 F.2d 1472, 1473 (9th Cir. 1989) (citing 42 U.S.C. § 2000e-5(e)). If the plaintiff fails to file within the 300-day time limit, the plaintiff's claim is subject to dismissal. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393-95 (1982). Here, the relevant 300-day time period is from September 8, 2001 to July 5, 2002.

Plaintiff's sole assertion of *quid pro quo* harassment was an incident she alleges occurred in August 2001, when Elkins allegedly told her that he would let her into the

reserve program if she made him happy. Bertasso-White Dep. at 130:2-13; Pl.'s Am. Mem. in Opp. to Defs.' Mot. for Summ. J., at 7. Because this alleged conduct occurred outside the relevant time period, plaintiff's *quid pro quo* claim is barred by the statute of limitations and is dismissed.

### **Plaintiff's hostile work environment and Section 1983 claims are not time-barred**

Under the continuing violation doctrine, a plaintiff may maintain a hostile work environment claim that would otherwise be barred by the applicable statute of limitations so long as the plaintiff is able to show some of the incidents giving rise to the claim occurred within the statute of limitations period. *Green*, 883 F.2d at 1475 (a plaintiff may avail himself or herself of this theory by demonstrating that the claims are founded on a pattern or practice of employer conduct that continued into the relevant period of limitations).

As noted above, a "hostile work environment" occurs when there is a pattern of ongoing and persistent harassment of sufficient severity to alter the terms and conditions of the plaintiff's employment. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66-67 (1986). Accordingly, claims that raise genuine factual issues as to the existence of a hostile work environment involve allegations of continuing violations. *Draper v. Coeur Rochester, Inc.*, 147 F.3d 1104, 1108 (9th Cir. 1998) (citations omitted).

Plaintiff alleges that she was subjected to a hostile work environment from 1998 until Elkins left the police department in 2001, asserting that Elkins "made it difficult for [her] to be at her place of employment because of the constant sexual comments, motions, [and making] it a very difficult place to be." Bertasso-White Dep., 203:14-17. The BOLI

PAGE 15 - OPINION AND ORDER

Determination of Substantial Evidence noted that plaintiff alleged that it was "very hard to come up with exact dates when the comments were made. These things went on weekly, monthly for about three years." Callahan Aff., Ex. J.

These allegedly discriminatory acts are not easily identifiable as individual significant events. However, the weekly and monthly harassment is significant in its cumulative effect. Because plaintiff's "hostile work environment claim is not based upon a series of discrete and unrelated discriminatory actions, but is instead premised upon a series of closely related similar occurrences that took place within the same general time period and stemmed from the same source," plaintiff's allegations adequately set forth a claim of a continuing violation. *Draper*, 147 F.3d at 1108. Accordingly, there is a genuine issue of material fact concerning whether plaintiff was subjected to a hostile work environment after September 8, 2001.

Similarly, plaintiff's Section 1983 claim is not time-barred. The applicable statute of limitations for this claim is two years. O.R.S. 12.110(1); *Sain v. City of Bend*, 309 F.3d 1134, 1139 (9th Cir. 2002). The continuing violations doctrine applies to Section 1983 claims. *Gutowsky v. County of Placer*, 108 F.3d 256, 259 (9th Cir. 1997). The City and Greens' motion is denied with respect to the hostile work environment and Section 1983 claims on the grounds that they are time-barred. However, as discussed below, the court nonetheless finds that neither the City nor Green is liable for plaintiff's hostile work environment or Section 1983 claim.

//

//

//

**Defendants are not liable for plaintiff's hostile work environment or Section 1983 claim**

As stated earlier, plaintiff's state law and *quid pro quo* harassment claims are dismissed because they are barred by the statute of limitations. As for plaintiff's hostile work environment and Section 1983 claims, the court finds that these claims should also be dismissed because plaintiff has failed to adduce evidence that the City or Green were aware, or had reason to be aware that Elkins had allegedly harassed plaintiff prior to Elkins' termination.

Even if a plaintiff is able to present a *prima facie* case that she was subjected to a hostile work environment, to recover from the employer, the employee must still prove that the employer is liable for the conduct. As noted above, when the alleged harasser is a supervisor, the employer is vicariously liable, subject to an affirmative defense. *McGinest*, 360 F.3d at 1119 (citations omitted). However, when the alleged harasser is a co-worker, the employer is liable only if the plaintiff proves that the employer knew or should have known of the harassment and failed to take adequate steps to prevent it. *Id.* (citations omitted). In determining whether the harasser is a supervisor or a co-worker, the court looks to whether the harasser had "immediate or successively higher authority" over the employee. *Burrell v. Star Nursery, Inc.*, 170 F.3d 951, 956 (9th Cir. 1999). It is irrelevant whether the harasser had immediate or successively higher authority over other employees if he or she did not have such authority over the plaintiff. *Swinton v. Potomac Corp.*, 270 F.3d 794, 805 (9th Cir. 2001) (citation omitted).

Here, the record establishes that Elkins did not have immediate or successively higher authority over plaintiff during the relevant time period – that is, from the time that she left the reserve position to work exclusively for the City as the utility billing clerk. *See* Bertasso-White Dep., at 75:1 to 76:2 (plaintiff testified that Elkins was not her supervisor, she did not report to him, he was not responsible for disciplining her, he was not responsible for her employment evaluations, and he had "no direct involvement whatsoever" in her employment). Accordingly, the court must evaluate the City's and Green's liability by asking whether the City or Green knew or should have known of the harassment and whether they took adequate steps to address it.

Plaintiff testified that she did not tell anyone about any of Elkins' allegedly harassing behavior until after he had resigned and moved to Alaska. *Id.* at 67:23 to 68:3; 72:16 to 79:1; 93:24 to 94:2; 111:9-10. There were no witnesses to the conduct of which plaintiff complains. *Id.* at 53:11 to 54:25. Plaintiff has adduced no evidence to show that either the City or Green knew or should have known of Elkins' alleged harassment toward plaintiff before early October 2001.

Once defendants learned of plaintiff's allegations, Green sent an inquiry to plaintiff asking her if she wanted to proceed in an investigation of Elkins' alleged conduct, and inviting her to schedule a meeting with Green. Plaintiff did not schedule a meeting with Green and did not agree to participate in an investigation until two weeks later. Defendants hired Colas in December 2001, with whom plaintiff spoke on December 10, 2001. Defendants also offered counseling to plaintiff, which she accepted, and the City adopted a new harassment policy.

Plaintiff's arguments that defendants knew that Elkins had allegedly harassed other women is of no consequence to plaintiff's claims if she cannot show that defendants knew, or had reason to know, that Elkins had harassed her. Similarly, the fact that the City compensated Elkins when he resigned is of no consequence because that occurred prior to plaintiff's complaints. Plaintiff's hostile work environment claim against the City and Green is dismissed.

Because the court finds that plaintiff has failed to produce evidence that would support a hostile work environment claim under Title VII, the court need not decide whether defendants acted pursuant to some custom, practice, or policy. Accordingly, plaintiff's Section 1983 claim is also dismissed. *See Learned v. City of Bellevue*, 860 F.2d 928, 932 (9th Cir. 1988).

**2.    Plaintiff's Claims Against Elkins**

At oral argument, plaintiff conceded that there is no due process or Title VII causes of action against Elkins. Plaintiff proceeds against defendant Elkins under a Section 1983 Equal Protection claim derived from Elkins' role as a supervisor for the police department and his alleged conduct between 1998 and 2001.

Defendant Elkins first asserts that plaintiff's claim is time-barred. A two-year statute of limitations applies to plaintiff's claim against Elkins. O.R.S. 12.110(1). Plaintiff filed her Complaint on August 1, 2003. She alleges that Elkins' harassment continued until the day Elkins left on October 5, 2001. The court finds that this is sufficient to create material issues of fact as to whether Elkins harassed plaintiff within the relevant time period.

Defendant next asserts that plaintiff's Section 1983 claim fails because defendant Elkins was not plaintiff's supervisor. Section 1983 provides that "[e]very person who, under color of any, statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." It is irrelevant for individual liability purposes whether Elkins was plaintiff's supervisor. Rather, to survive summary judgment, plaintiff need only show that Elkins, acting under color of state law, personally participated in depriving plaintiff of constitutional rights. *See, e.g., Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). The court is satisfied that plaintiff has made this *prima facie* showing. Defendant Elkins' motion is denied.

## **CONCLUSION**

For the foregoing reasons, the Motion for Summary Judgment brought by the City and Green (Doc. #26) is GRANTED. Defendant Elkins' Motion for Summary Judgment (Doc. #22) is DENIED.

IT IS SO ORDERED.

DATED this __18___ day of May, 2005.

                        __/s/Ancer L.Haggerty_____
                                  Ancer L. Haggerty
                                  United States District Judge